

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JESSE L. SMITH,

     Plaintiff,

v.                         Civil Action No. 3:19CV563

MRS. S. PETTY, et al.,

     Defendants.

### MEMORANDUM OPINION

Jesse L. Smith, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1]  The matter is proceeding on Smith's Amended Complaint ("Complaint," ECF No. 21.)  Smith named as Defendants:  Mrs. Petty, a Registered Nurse at Sussex 2 State Prison ("Sussex 2"); Mrs. Williams, a Licensed Practical Nurse at Sussex 2; and Dr. Militana, a physician at Sussex 2.[2]  The matter is before the Court on DEFENDANT CHERSHONDRA WILLIAMS' FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS WITH PREJUDICE ("Motion to Dismiss," ECF No. 44.)  For the reasons set forth below, the Motion to Dismiss will be denied.

---

[1] The Court employs that pagination assigned by the CM/ECF docketing submission for the citations to the parties' submissions.  The Court corrects the spelling, punctuation, and capitalization.

[2] By a separate Memorandum Opinion and Order, Court dismissed all claims against Defendants Petty and Militana because Smith failed to serve them in a timely manner.

## I.  STANDARD FOR A MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause

of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 242-43 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

The Court recites below Smith's allegations pertinent to Defendant Williams.

## II.  SUMMARY OF PERTINENT ALLEGATIONS

In 2018, Smith was incarcerated in Sussex 2.  (ECF No. 21-1, at 2.)  In February of 2018, Smith began experiencing severe pain around his waist area.  (Id.)  Smith also had been losing weight. (Id.)  On February 27, 2018, Smith submitted an Offender Request that stated:

> I really need to come to your medical department because I'm suffering from medical situations that [are] effecting my health and wellbeing.  I have a bladder infection and I'm rapidly losing weight fast.  I need to have my urine and blood checked right away.  Because I have symptoms of the bladder infection, but I don't know what's causing the weight loss.  I once was 167 lbs., but now I [am] under 154 lbs.

(Id. at 9.)  According to Smith, the Virginia Department of Corrections ("VDOC") policy requires that inmate requests for medical care "be triaged" within 24 hours and that prisoners should be seen by a medical profession within 72 hours or 96 hours, on weekends.  (Id. at 2-3.)  Smith's Offender Request was received in the Medical Department on March 6, 2018.  (Id. at 4.) Nevertheless, Defendant Williams did not respond to Smith's Offender Request for another two weeks.  (Id. at 9.)  On March 20, 2018, Defendant Williams responded, "You will be scheduled to see the doctor."  (Id.)

Meanwhile, Smith's condition worsened and his pain increased. (Id. at 4.)  Smith complained to a nurse that his pain was getting worse and that he was not receiving any response to his request.

4

(Id.)   The nurse informed him that he needed to write to the medical department.   (Id.)

As of April 23, 2018, Smith had not been seen in the medical department.   (Id.)   Therefore, on April 23, 2018, Smith filed an Emergency Grievance wherein he stated:

> I'm suffering from a bladder infection/urinary tract infection (U.T.I.).   I've wrote to the Medical Department of Sussex II State Prison about this matter over #11 weeks ago.   And I've asked to be placed on the sick call list to see the doctor.   But I haven't seen nor received any medical treatment/medications from any medical personnel yet.   My health issue has gotten worse now and mental, emotional, and physical damage accrued due to no treatment from the medical department concerning the issue.

(Id. at 10.)   That same day, Defendant Petty responded to Smith's Emergency Grievance and informed him that he was scheduled for an appointment later in the day.   (Id.)

Also, on April 23, 2018, Smith submitted an Informal Complaint complaining about the lack of medical care for his bladder infection.   (Id. at 12.)

Smith was seen in the Medical Department on April 24, 2018. (Id. at 5.)   By this time, Smith was experiencing "excruciating pain."   (Id.)   Dr. Militana explained to Smith that the severe pain was caused by the fact that the infection had spread to Smith's kidney.   (Id.)   Dr. Militana prescribed a strong antibiotic.   (Id.)   Dr. Militana did not prescribe any pain medication.   (Id.)

On April 30, 2018, a nurse came to see Smith on his housing pod for his complaints of weight loss.  (Id. at 6.)   Smith had refused to go to the appointment because Dr. Militana already had seen Smith about his weight loss.  (Id.)

On May 1, 2018, Smith submitted an Emergency Grievance complaining that he was not receiving any pain medication.  (Id. at 5-6.)

On May 10, 2018, Defendant Williams responded to Smith's April 23, 2018 Informal Complaint stating, "On 4/30/2018, @10:25 a.m., you were scheduled for Sick Call.  At that time, you refused app[ointment]."  (Id. at 6.)

On April 29, 2018, Smith submitted an Informal Complaint complaining that he was experiencing pain associated with his bladder infection, but had not been prescribed any pain medication. (Id.)   On May 8, 2018, Defendant Williams responded to this Informal Complaint and stated again that he had refused to go to his appointment of April 30, 2018.  (Id.)

On May 8, 2018, Smith then submitted a Regular Grievance wherein he complained about the initial delay in providing medical care and also that he had not been prescribed pain medication. (Id. at 15.)  On June 9, 2018, the Warden responded that:  "Care was delayed and you should have been seen sooner than you were. However, I see that you received your entire antibiotic.  Pain

medications like Tylenol and Motrin can be taken for UTI pain and are available in the commissary." (Id. at 16.)

Smith contends that Defendant Williams violated his right to adequate medical care by her dilatory action in responding and scheduling medical care in response to his February 27, 2018 Offender Request.

### III.  ANALYSIS

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at 1381). With

respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." Quinones, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at 837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively

8

recognized that his [or her] actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)), overruled in part on other grounds by Farmer, 511 U.S. at 837. "Where, [as here], a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (quoting Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008)).

Defendant Williams contends that Smith's allegations are insufficient to satisfy either the objective or the subjective prongs for an Eighth Amendment claim. She is incorrect.

9

With respect to the objective prong, a urinary tract infection that has spread to an individual's bladder and kidney constitutes a serious medical need. See Santiago v. Stamp, 303 F. App'x 958, 961 (2d Cir. 2008); Wells v. Turlich, No. 19-12218, 2019 WL 6728351, at *6 (E.D. La. Dec. 11, 2019); Kozlowski v. United States, No. 08-13880-BC, 2010 WL 779177, at *3 (E.D. Mich. Mar. 8, 2010). Additionally, there was roughly a two-month delay between Smith's request for care on February 27, 2018 and the provision of care on April 24, 2018. During this period, Smith was experiencing "excruciating pain." (ECF No. 21-1, at 5.) These allegations are sufficient to support the objective prong of an Eighth Amendment claim against Defendant Williams. See Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010))); see also Formica, 739 F. App'x at 755.

Furthermore, the allegations of the Complaint support an inference that Defendant Williams acted with deliberate indifference to this serious medical need. On February 27, 2018, wrote a request for medical care wherein he stated, in pertinent part, "I really need to come to your medical department because I'm suffering from medical situations that [are] effecting my health and wellbeing. I have a bladder infection and I'm rapidly

losing weight fast." (ECF No. 21-1, at 9.) Defendant Williams was the individual tasked with responding to this request within twenty-four hours under VDOC guidelines. Nevertheless, Defendant Williams waited almost two weeks to respond to the request at which time she simply stated that Smith would be scheduled to see the doctor. Despite the prior delay, Defendant Williams did not attempt to ensure that Smith was promptly seen by a doctor. Smith had to wait more than another month before he was seen by a doctor. When Smith filed a grievance about his medical care, the Warden acknowledged there had been an inappropriate delay in providing medical care. The allegations indicate that Defendant Williams acted with deliberate indifference to the simple process of arranging for Smith to receive a prompt medical appointment for his infection.[3] See Formica, 739 F. App'x at 758 (recognizing that

---

[3] Defendant Williams suggests that because no physician ever prescribed prescription pain medication for Smith's bladder and kidney infection, she could not have perceived that his condition posed a substantial risk of serious harm to his person. Such an argument might be persuasive if Dr. Militana concluded that the bladder and kidney infection did not require any treatment. See Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996) (observing that a prison medical staff's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not violate the Constitution.") But that was not the case. Dr. Militana promptly ordered a strong antibiotic to treat the infection which had spread from Smith's bladder to his kidney, presumably because of the delay in treatment. Such facts support an inference that a medical professional should have perceived that prompt treatment for the infection was appropriate to alleviate a substantial risk of serious harm to Smith's person.

"the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment" (quoting McGowan, 612 F.3d at 640)).   Accordingly, the Motion to Dismiss (ECF No. 44) will be denied.

Any party wising to file a Motion for Summary Judgment, must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

/s/   REP
_____
Robert E. Payne
Senior United States District Judge

Date: May 12, 2021
Richmond, Virginia

12