IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JESSE L. SMITH,

    Plaintiff,

v.                                                 Civil Action No. 3:19CV563

MRS. S. PETTY, et al.,

    Defendants.

**MEMORANDUM OPINION**

Jesse L. Smith, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] The matter is proceeding on Smith's Amended Complaint ("Complaint," ECF No. 21.) Smith named as Defendants: Mrs. Petty ("Petty"), a Registered Nurse at Sussex 2 State Prison ("Sussex II"); Mrs. Williams ("Williams"), a Licensed Practical Nurse at Sussex II; and, Dr. Militana ("Militana"), a physician at Sussex II.[2] As pertinent here, the Complaint asserts that Williams violated Smith's right to adequate medical care by her dilatory action in

---

[1] The Court employs that pagination assigned by the CM/ECF docketing submission for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization.

[2] By Memorandum Opinion and Order entered on May 13, 2020, Court dismissed all claims against Defendants Petty and Militana because Smith failed to serve them in a timely manner. (ECF Nos. 55, 56.)

responding to and scheduling medical care in response to his February 27, 2018 Offender Request.

The matter is before the Court on the DEFENDANT CHERSHONDRA WILLIAMS, LPN'S MOTION FOR SUMMARY JUDGMENT ("Williams' Motion for Summary Judgment," ECF No. 75) and Smith's Motion For Summary Judgment Against Defendant Mrs. Chershondra Williams (LPN) ("Smith's Motion for Summary Judgment," ECF No. 65.) For the reasons set forth below, Williams' Motion for Summary Judgment will be denied and Smith's Motion for Summary Judgment will be denied.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."

Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of her Motion for Summary Judgment, Defendant Williams submitted her Declaration ("Williams's Decl.," ECF No. 76-1) and copies of Smith's medical records that the Court refers to by their CM/ECF designation (ECF No. 76-2, at 1-49.) In response to Defendant Williams's Motion for Summary Judgment and in support of his Motion for Summary Judgment, Smith submitted multiple affidavits (ECF Nos. 66-1, ECF No. 72, ECF No. 80-1) and copies of correspondence and medical records that the Court refers to by their CM/ECF designation.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of the non-moving parties.

## II. SUMMARY OF PERTINENT UNDISPUTED FACTS

### A. History Of Smith's Medical Condition

In 2018, Smith was incarcerated in Sussex II. (ECF No. 21-1, at 2.) On or about February 20, 2018, Smith developed a urinary tract infection. (ECF No. 66-1, at 1.) On February 27, 2018, Smith submitted an Offender Request that stated:

> I really need to come to your medical department because I'm suffering from medical situations that [are] effecting my health and wellbeing. I have a bladder infection and I'm rapidly losing weight fast. I need to have my urine and blood checked right away. Because I have symptoms of the bladder infection, but I don't know

4

> what's causing the weight loss. I once was 167 lbs., but now I [am] under 154 lbs.

(ECF No. 80-1, at 6 (extra parentheses omitted).) Smith's Offender Request was received in the medical department on March 6, 2018. (Williams Decl. ¶ 6.) Even though the fact that Virginia Department of Corrections ("VDOC") guidelines require that the request be reviewed within twenty-four hours, weeks went by and Smith failed to receive a response to his Offender Request. (ECF No. 72, at 4.)

Finally, on March 20, 2018, Williams tersely responded to Smith's Offender Request by stating, "you will be scheduled to see the doctor." (ECF No. 80-1, at 6.) Nevertheless, Smith was not seen by a doctor until April 24, 2018, more than a month later. (ECF No. 72, at 2.) During the period between February 27, 2018 and April 24, 2018, Smith experienced nausea and "extreme pain." (Id. at 1.) On April 24, 2018, Smith was seen by Dr. Militana, who prescribed a strong antibiotic. (ECF No. 80-1, at 2.) Dr. Militana informed Smith that his pain was caused by the fact that the urinary tract infection had spread to his bladder and kidneys. (Id.) Smith continues to suffer form, inter alia, lower back pain, constant cold chills, and "[b]urning sensations every time" he urinates. (Id. at 4-5.)

On or about June 4, 2018, Smith submitted a grievance complaining about the delay in the provision of medical care. (Id. at 31-32.) On June 19, 2018, prison staff responded to his grievance, determining that it was "FOUNDED." (Id. at 32.) Specifically, prison staff noted that "[a]n investigation into your complaint reveals. . . '[c]are was delayed and you should have been seen sooner than you were.'" (Id.)

B. **Williams's Interaction With Smith**

Williams is a Licensed Practical Nurse. (Williams Decl. ¶ 1.) Williams can only do certain tasks under her medical license. (Id. ¶ 7.) For example, although she is able to administer medication that has been ordered by a provider, she cannot prescribe pain medication or antibiotics. (Id.)

On March 5, 2018, Williams began working at Sussex II as a pill call nurse. (Id. ¶ 4.) As a pill call nurse, Williams passed out medications to the inmates at Sussex II. (Id.)

"After a few weeks as a pill call nurse and based on a vacancy that had not been filled in sometime, [Williams] was asked to fill the position of triage nurse for sick call." (Id.) On or about March 19, 2018, Williams became the sick call nurse. (Id. ¶¶ 4-6.) "When [Williams] began as the sick call nurse, there was a backlog of offender requests that had not been responded to. [Williams] addressed each request as they had been received." (Id.

¶ 5.) The record does not reflect what, if any, action Williams took to prioritize the backlogged offender requests or to secure assistance to expedite the review of those requests.

Williams "received and reviewed" Smith's Offender Request on March 20, 2018, one day after she became sick call nurse. (Id. ¶ 6.) "After determining that [Smith] should be scheduled to be seen by a doctor," on March 20, 2018, Williams sent Smith's "Offender Request to the scheduling nurse who works with the provider at [Sussex II] who was in charge of putting [Smith] on the list to be seen." (Id. ¶ 8.)

The record does not reflect that Williams advised anyone that Smith's request had been long-neglected or that he needed to be seen right away. The Court presumes that, if such evidence existed, it would have been presented by Williams. It was not. Instead, Smith argues that, after forwarding Smith's "Offender Request to the nurse in charge of scheduling, [Williams had] no control over when an offender [was] scheduled to be seen by the provider." (Id. ¶ 9.) That, of course, does not relieve Williams of the obligation to inform others who could expedite the obviously delayed treatment.

After responding to Smith's Offender Request on March 20, 2018, Williams "had no more involvement in his medical care and treatment." (Id. ¶ 10.) Williams says that she "was never

7

notified that [Smith] had not been seen by the provider." (Id.)

Williams stopped working at Sussex II on August 31, 2018. (Id. ¶ 12.)[3]

### III. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Smith must demonstrate that Williams acted with deliberate indifference to his serious medical needs. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious

---

[3] In denying the Williams's Motion to Dismiss, the Court examined the grievance material in the record and found that Williams had responded to an April 29, 2018 Informal Complaint by Smith wherein he complained about his bladder infection. Smith v. Petty, No. 3:19CV563, 2021 WL 1940269, at *3 (E.D. Va. May 13, 2021). That finding was in error. Williams "never received or responded to any of [Smith's] Grievances that he submitted with regard to his medical care. There was another nurse at [Sussex II] with the same last name . . . who was the Health Service Administrator. Her name was A. Williams, HSA, and she responded to grievances that were submitted." (Williams Decl. ¶ 11.)

8

harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

9

### A. Williams' Motion For Summary Judgment

When Williams stepped into the position of triage nurse, she entered a situation that posed a significant peril to Sussex II inmates in need of medical care.[4] According to Williams, the position of triage nurse had been vacant for some time, and, when she took on the job, there was a back log of inmate requests for medical care that had not been reviewed. And, the record shows that, when Williams finally reviewed Smith's medical request, three weeks had elapsed since Smith had submitted the request. Thereafter, Williams informed Smith that he would be scheduled to see the doctor and forwarded his Offender Request to the nurse in charge of scheduling. (Williams Decl. ¶ 9.) However, Williams did nothing to alert the scheduler of Smith's condition or the need to expedite the already long-delayed treatment obviously he needed. As a result, more than another month elapsed before Smith was seen by the doctor, by which time his urinary tract infection had spread to his bladder and kidneys.

---

[4] See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 585 (3d Cir. 2003) ("A reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs.").

10

Williams concedes, Smith had a serious medical need. Williams contends that she did not act with deliberate indifference because she approved Smith's request to see the doctor and had no control over when he would be seen by the doctor. The fact that Smith received some medical care does not by itself extinguish Smith's constitutional claims based on inadequate medical care. Hunt v. Upoff, 199 F.3d 1220, 1224 (10th Cir. 1999). Given the delay that already had occurred before Williams reviewed Smith's Offender Request, simply passing his request along to another prison official without even attempting to see that the request was expedited or securing assurance that Smith would be seen promptly, is strong, perhaps even conclusive, proof of indifference, rather than, as Williams says, proof of reasonable medical care. Parrish ex rel. Lee, 372 F.3d at 303 (quoting Rich, 129 F.3d at 340 n.2). On this record, a reasonable jury could conclude that Williams' failure to make any effort to ensure that Smith would receive prompt care for his urinary tract infection amounts to deliberate indifference. See Natale, 318 F.3d at 585; cf. Griffin v. Mortier, 837 F. App'x 166, 173 (4th Cir. 2020) (observing "a medical professional's placement of a person who had a seizure and suffered a head injury in a holding cell without examination or treatment can support a claim that the medical professional acted with reckless indifference to the possibility that the person may suffer

11

further severe physical and emotional injury"). Accordingly, Williams' Motion for Summary Judgment will be denied.

### B. Smith's Motion For Summary Judgment

Nevertheless, the current record does not conclusively establish Williams's liability. Construed in Williams's favor, the record gives rise to an inference that Smith's injuries might be attributable to the indifference of the individuals or entity responsible for coordinating care at the Sussex II. See Glisson v. Indiana Dep't of Corr., 849 F.3d 372, 378 (7th Cir. 2017). In Glisson, the Seventh Circuit observed,

> this case well illustrates why an organization might be liable even if its individual agents are not. Without the full picture, each person might think that her decisions were an appropriate response to a problem; her failure to situate the care within a broader context could be at worst negligent, or even grossly negligent, but not deliberately indifferent. But if institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible.

849 F.3d at 378.

Here, there is some evidence indicating that the supervisory officials or entity charged with providing medical care to inmates at Sussex II simply ignored inmate requests for medical care in the three weeks where the position of triage nurse was vacant. When they eventually restaffed the position of triage nurse, they

choose Williams. Williams is not qualified to assess patients.[5] Given these circumstances, the record does not conclusively demonstrate that Smith's injuries were caused by Williams's deliberate indifference, rather than the indifference of supervisors or policy makers at Sussex II. See Thomas v. Cook Cty. Sheriff's Dep't, 604 F.3d 293, 305 (7th Cir. 2010) (rejecting county's claim of inconsistent verdicts because "the jury could have found that the [individual medical personnel] were not deliberately indifferent to [inmate's] medical needs, but simply could not respond adequately because of the well-documented breakdowns in the County's policies"). Accordingly, Smith's Motion for Summary Judgment will be denied.[6]

## IV. CONCLUSION

For the reasons outlined above, DEFENDANT CHERSHONDRA WILLIAMS, LPN'S MOTION FOR SUMMARY JUDGMENT (ECF No. 75), Smith's Motion For Summary Judgment Against Defendant Mrs. Chershondra

---

[5] When reviewing Offender Requests for medical care, Williams contends that she had no ability to prioritize those requests and ensure that an inmate with pressing medical needs received prompt care. That contention is highly doubtful. Indeed, it is inconsistent with the concept of triage.

[6] It makes no difference that the record strongly shows that Smith was the responsible person because that question is one for the jury where, as here, there is some, albeit slight, evidence pointing the other way.

13

Williams (LPN) (ECF No. 65) and Smith's "Secondary Motion For Summary Judgment" Plaintiff's Jesse L. Smith's Motion Asking The Courts To Grant Plaintiff's Motion For Summary Judgment Against Defendant "Mrs. Chershondra Williams (LPN)" will be denied. Because of the issues presented and the serious neglect of which Smith was a victim and the need for assistance in prosecuting Smith's claim, the Court will appoint counsel to represent Smith.

The Clerk is directed to send a copy of this Memorandum Opinion to Smith and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 24, 2022